# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Erika Jo Larson and<br>Jerod Larson<br><br>    Plaintiffs,<br><br>v.<br><br>Safeguard Properties, Inc., and<br>Chase Manhattan Mortgage Corp.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 05-1005-WEB<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Now before the Court is Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted. Plaintiffs are suing for fraud and assert jurisdiction under 28 U.S.C. § 1332.

### I.. Nature of the Case

The following facts, as alleged in Plaintiffs' complaint, are accepted as true for purposes of this motion. Chase Manhattan Mortgage Corp. (Chase) is the seller of residential property. Plaintiffs inspected property for sale by Chase and entered into a contract to purchase it on May 4, 2004. On that same day, Plaintiffs also signed two addendums to the real estate contract. In Addendum "A", Plaintiffs agreed that they were accepting the house in an 'as is' condition and that the seller made no warranties. In the second addendum, Plaintiffs were put on notice that there may be mold on the property, acknowledged that they should use due diligence with experts, and agreed to release Chase and its agents from any liability that

resulted from any mold. Chase hired Safeguard Properties Inc. (Safeguard) to conduct repairs prior to closing. Unbeknownst to Plaintiffs, a significant leak occurred in the basement prior to the June 1, 2004 closing date. Contractors hired by Safeguard to clean the carpets informed the owner of the house about the water leak and that it needed to be fixed; however, the owner of the house did not appear worried and said they would sell the property as is. Defendants did not disclose the water leak to Plaintiffs. On June 1, 2004 Plaintiffs closed on the property and subsequently found a significant amount of water and mold in the basement. The mold has rendered the house uninhabitable and has caused medical problems to Erika Jo Larson and her two year old son.

## II. Motion to Dismiss Standards

Defendant Safeguard filed a motion to dismiss on February 11, 2005 and has not yet filed a responsive pleading. (Doc. 16). Defendant Chase filed an answer to Plaintiffs' complaint on January 31, 2005 and subsequently filed a motion to dismiss on February 24, 2005. (Doc. 14, 18).

> Technically, it is impermissible to file an answer and thereafter file a Rule 12(b)(6) motion to dismiss. See Fed. R. Civ. P. 12(b) (stating that a motion to dismiss under the rule "shall be made before pleading if further pleading is permitted"). However, because Rule 12(h)(2) permits the court to consider '[a] defense of failure to state a claim upon which relief can be granted' within a Rule 12(c) motion for judgment on the pleadings, the court will treat defendant's motion as if it had been submitted under Rule 12(c). The distinction between the two rules is purely one of procedural formality, however. The court will employ the same standard that it uses to analyze a Rule 12(b)(6) motion to dismiss to evaluate a Rule 12(c) motion for judgment on the pleadings.

*Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193 (D. Kan. 2002) (internal quotations and citations omitted); see also *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

The two motions are only nominally different; therefore, to avoid confusion, the Court will refer to

the motions jointly as one to dismiss under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss is appropriate when the plaintiff can prove no set of facts in support of the claims that would entitle plaintiff to relief." *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  Furthermore, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  *Robbins v. Wilkie,* 300 F.3d 1208, 1210-1211 (10th Cir. 2002).

Generally a Court does not look beyond the face of a complaint when analyzing a Rule 12(b)(6) motion.  *Macarthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2001).

> There are two exceptions to this rule.  First, the district court may consider "mere argument" contained in the parties' memoranda concerning a motion to dismiss.  Second, it is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.

*Id.* (internal quotations and citations omitted).

This lawsuit concerns fraud in connection with the sale of real estate; therefore, the real estate contract and its addendums are documents that are central to Plaintiffs' claim and are referred to in the complaint.  (Pl. Ex. A); (Def. Ex. A, B).  The Court will consider these documents; however, the Court will not consider Plaintiffs' exhibits B and C as these are not documents referred to in the complaint. (Pl. Ex. B, C).

Plaintiffs' response to Defendants' motion to dismiss refers to numerous facts and a cause of action

3

which were not alleged in the complaint. These are allegations outside of the pleadings and they do not fit within either of the two exceptions; therefore, the Court will neither consider Plaintiffs' recently asserted breach of contract claim nor Plaintiffs' newly alleged facts. *Macarthur*, 309 F.3d at 1221. Plaintiffs cannot amend their complaint by alleging new facts and claims in their response.

### III. Pleading with Particularity

Plaintiffs' complaint alleges that Defendants committed fraud by silence or fraudulent concealment by failing to communicate material facts to Plaintiffs. *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906 (10th Cir. 2005) (under Kansas law, fraudulent concealment and fraud by silence are different names for the same cause of action). Defendants argue that Plaintiffs have failed to plead with particularity in accordance with Rule 9(b) and, their claim should be dismissed. Fed. R. Civ. P. 9(b). Under Kansas law, the elements for a cause of action for fraudulent concealment are:

> (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have been discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff.

*Miller v. Slain, Listrom, Eisenbarth, Sloan and Glassman*, 978 P.2d 922, 932, 267 Kan. 245, 261 (1999) (citations omitted).

Rule 9(b) states "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Rule 9(b) must be read in conjunction with the

principles of Rule 8, which calls for pleadings to be simple concise and direct." *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations and citations omitted).

First, Defendants argue that Plaintiffs' claim fails because it does not specifically identify the individuals who should have disclosed the water leak. Defendants rely on the requirements for fraud for support. "[T]o survive a motion to dismiss, an allegation of fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Indy Lube Invs., L.L.C. v. Wal-Mart Stores, Inc.,* 199 F. Supp. 2d 1114, 1121 (D. Kan. 2002). The Court declines to extend this requirement to a case of fraudulent concealment. It would not serve Rule 9(b)'s purposes to compel Plaintiffs to speculate about the specific individual who should have made disclosures of material fact. *Sunbird Air Services, Inc. v. Beech Aircraft Corp.*, 789 F. Supp. 364, 366 (D. Kan. 1992) (The requirement of greater specificity is to give defendants notice of the conduct complained of).

Defendants next argue that Plaintiffs' claim is too general because Plaintiffs failed to set forth separately the toritious acts of each defendant. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1094 (N.D. Okla., 2003). Paragraph 13 specifically alleges that neither Safeguard nor Chase disclosed to Plaintiffs the material defects in the home. (Compl. ¶ 13). The previous paragraphs describe that the defects were the water leak and mold. (Id. ¶ ¶ 10-12). The Court disagrees with Defendants. The allegations give Defendants notice of the alleged wrongdoing and are specific enough to satisfy both Rules 9(b) and 8. Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 8.

Next, Defendants argue that Plaintiffs failed to allege that Defendants had knowledge of the water leak and mold. Rule 9(b) states that knowledge only needs to be averred generally. Fed. R. Civ. P. 9(b).

5

Plaintiffs state in their complaint that Chase was the seller of the house and Safeguard was contracted to do repairs. (Compl. ¶ ¶ 5, 8). Contractors hired by Safeguard discovered the leak and informed the owners of the house. (Id. ¶ 12). Taking the facts in the complaint as true, it is clear the Chase had knowledge of the water leak because they owned the house. Safeguard's claim is equally untenable as knowledge need not be pleaded with particularity; moreover, all that Plaintiffs must plead is "minimal factual allegations on those material elements that must be proved." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 992 F. Supp. 1264, 1266 (D. Kan. 1998); Fed. R. Civ. P. 9(b). The complaint pleads sufficient facts to generally show knowledge. Plaintiffs allege an agency relationship, as Safeguard employed the contractor that discovered the leak. (Compl. ¶ ¶ 11-12); See *Arkansas City v. Anderson*, 762 P.2d 183, 190, 243 Kan. 627, 635 (1988) (in a case for fraud, the laws of agency impute the knowledge of an agent to the principal).

Finally, Defendants argue that even if they had knowledge of the water leak, Plaintiffs have failed to allege that Defendants had a duty to disclose this material defect. Rule 9(b) states that it is the circumstances constituting the fraud, not the elements, that must be pleaded with particularity. Fed. R. Civ. P. 9(b). "Although plaintiff need not state precisely each element of the claim, it must plead minimal factual allegations on those material elements that must be proved." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 992 F. Supp. 1264, 1266 (D. Kan. 1998); see Fed. R. Civ. P. 8. Plaintiffs have stated that Safeguard is an agent of Chase, who sold the property to Plaintiffs, and that both Defendants failed to disclose the water leak and mold. (Compl. ¶ ¶ 5, 8). Viewing the pleadings in the light most favorable to the Plaintiffs and construing them liberally, the Court determines that Plaintiffs' complaint sufficiently puts Defendants on notice that they are alleged to have had a duty to disclose material defects to Plaintiffs.

## IV. Inability to State a Claim

Defendants argue that Plaintiffs' claim should be dismissed because Plaintiffs: 1) cannot show that Defendants had a duty to disclose the water leak and mold; 2) are unable to show that Defendants had knowledge of the existence of the mold and even if they could show this, Plaintiffs cannot show that they could not have discovered the mold themselves; 3) cannot show reliance on the silence of the Defendants; and 4) can prove no set of facts that show they suffered damages as the result of the non-disclosure of the mold.

(1). Defendants' duty to disclose

Plaintiffs argue that the duty to disclose emanates from the contractual relationship between a buyer and seller of real estate. "When a [seller] has knowledge of a defect in property which is not within the fair and reasonable reach of the [buyer] and which he could not discover by the exercise of reasonable diligence, the silence and failure of the [seller] to disclose the defect in the property constitute actionable fraudulent concealment." *Green v. Geer,* 720 P.2d 656, 659, 239 Kan. 305, 309 (1986).

Defendants argue that the notice given to Plaintiffs in the mold disclosure and release addendum was sufficient to relieve them of a further duty to reveal any subsequently discovered defects. The "Disclosure and Release Regarding Mold Addendum to Sales Contract" states:

> Buyer is hereby advised that mold...may exist at the property...and may cause physical injuries... Buyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from...mold and hold harmless, release and indemnify seller, Chase Manhattan Mortgage Corporation, listing broker, Selling Broker/Agent, their officers, employees, agents, heirs,

7

> executors, administrators, and successors from any liability/resource/damages (financial or otherwise)...
> Chase Manhattan Mortgage Corporation real estate brokers and agents are not qualified to inspect property for mold...The purpose of this disclaimer is to put buyers on notice to conduct their own due diligence regarding this matter using appropriate qualified experts.

(Def. Ex. 1).

Defendants cite *Boegel v. Cologrado Nat'l Bank of Denver,* 857 P.2d 1362, 18 Kan. App. 2d 546 (1993), as authority for their argument that they did not breach their duty to disclose. In *Boegel,* a buyer contracted to inspect and purchase a piece of land 'as is' and the seller specifically made no warranties regarding the irrigation equipment. *Id.* at 1364. Seller knew the irrigation system to be defective. *Id*. The buyer did not conduct a reasonable inspection; consequently, he did not find the material defects. *Id.* at 1365. The buyer sued under the theory of fraudulent concealment and lost. *Id.* at 1366. On appeal, the buyer argued that the seller had a duty to disclose the defective irrigation system. *Id.* at 1363. Citing *Green*, the court held that the seller had no duty to the buyer because the buyer was an experienced farmer and he failed to reasonably inspect the irrigation system prior to closing. *Id.* at 1365; *Green,* 720 P.2d at 659.

Like *Boegel*, Chase sold the property to Plaintiffs 'as is'. *Boegel*, 857 P.2d at 1364. Additionally, the disclaimers in *Boegel* and the case *sub judice* both had the effect of putting the buyer on notice to inspect for a specific defect. *Id.* Therefore, the existence of a duty to disclose depends on if the defect could have been discovered by reasonable inspection. The reasonableness of Plaintiffs' inspections is a question of fact and Defendants have not shown that Plaintiffs cannot prove any set of facts entitling them to relief.

Safeguard separately argues that there is no duty to disclose because Safeguard had neither a

8

contractual nor a fiduciary relationship with Plaintiffs. Curiously, Plaintiffs fail to address this argument.

The facts alleged in Plaintiffs' complaint show that Safeguard was not in privity of contract with Plaintiffs. However, Kansas courts have recognized that privity of contract is not always required to maintain a suit for fraud. *Griffith v. Byers Construction Co.*, 510 P.2d 198, 212 Kan. 65 (1973); *Citizens State Bank v. Gilmore,* 603 P.2d 605, 226 Kan. 662 (1979); *State ex rel. Stephan v. GAF Corp.*, 747 P.2d 1326, 242 Kan.152 (1987). The above Kansas cases all have a common fact pattern and holding. A vendor may be liable to a third party for fraudulent concealment if he sells without disclosing a defect to a second party, who in turn, innocently sells the defective item to a third party.

However, it would be an unwarranted deduction to conclude that the case *sub judice* fits within this exception. Safeguard is not alleged to have ever owned or sold the property in this case. Because this pivotal link is absent, Safeguard had no duty to Plaintiffs to disclose the water leak and mold. Plaintiffs make no argument alleging privity or stating a claim against Safeguard; therefore, the claim against Safeguard must be dismissed. The Court will address subsequent arguments in this motion with respect to the remaining Defendant, Chase.

(2). Chase's knowledge of mold

Chase next argues that Plaintiffs cannot show: 1) that Chase had knowledge of the water leak or mold and 2) that Plaintiffs could not have discovered the defect themselves.

With respect to Chase's first argument, Plaintiffs specifically allege in their complaint that contractors informed the owners of the leak. (Compl. ¶ ¶ 12). Plaintiffs also allege that Chase was the

owner of the house. (Id. ¶ ¶ 5). If Plaintiffs can produce evidence proving these allegations, the first element of knowledge would be established.

Chase supports its second argument by stating that the mold disclosure form shows that Plaintiffs had the ability to discover the mold because they had notice that it might exist. Chase's argument is unpersuasive. Notice of a possible defect is a factor to consider when evaluating the reasonableness of Plaintiffs' inspection but it does not, standing alone, justify dismissal. Plaintiffs allege that they carefully inspected the home upon signing the contract and that they visited the residence prior to closing. (Compl. ¶ ¶ 6, 7). Whether these actions constitute a reasonable inspection in light of the mold notice, will depend on further facts. Therefore, the allegations are sufficient to survive a motion to dismiss.

(3) Reliance on Defendant's silence

Chase argues that Plaintiffs cannot allege that they justifiably relied on Chase's duty to communicate material facts because: 1) Plaintiffs executed the mold disclosure and release addendum; and 2) Plaintiffs executed an 'as is' addendum. Plaintiffs' again neglect to make an argument in support of their position.

The test for reliance is set forth in *Alires v. McGehee*, 85 P.3d 1191, 277 Kan. 398 (2004). The court held:

> Under the facts of this case, the buyer of real estate could not reasonably rely upon representations of the seller when the truth or falsity of the representation would have been revealed by an inspection of the subject property and the misrepresentations were made prior to or as part of the contract in which the buyer contracted for the right to inspect, agreed that the statements of the seller were not warranties and should not replace the right of inspection, declined inspection, and waived any claims arising from defects which would have been revealed by an inspection.

*Id.* at 1199-1200.

Chase's claims are unpersuasive. The 'as is' clause in the contract does not automatically preclude reliance because "an 'as is' provision in a real estate contract does not bar a buyer's claim based on fraud or intentional misrepresentation." *Id.* at 409. In the case *sub judice*, the pleadings allege that buyers inspected the home when they signed the contract and visited the home before closing; yet, Plaintiffs did not discover the defect until after taking possession. (Compl. ¶ ¶ 6, 7). The issue again is the reasonableness of Plaintiffs' inspections, which, as stated earlier, requires further facts; therefore, Plaintiffs' allegations, when viewed in the most favorable light, may be reasonable and entitle them to relief.

(4) Damages

Chase argues that Plaintiffs can prove no set of facts that would show that they suffered damages as a result of non-disclosure of the water leak and mold. Chase makes two arguments to support this contention. First, Plaintiffs cannot establish a causal connection between any claimed damage and Chase's actions because Plaintiffs had notice of possible mold. Second, Plaintiffs released Chase of all liability resulting from mold when they signed the mold disclosure and release form. Once again, Plaintiffs inexplicably fail to provide any argument to the contrary.

Plaintiffs allege property damage and personal injury because of the mold and water leak which Chase knew of, but did not disclose. (Compl. ¶ 14). These allegations are sufficient to connect Plaintiffs' damages and Chase's alleged tortious conduct. Chase provides no legal support for their contention that mere notice of a possible defect, without more, eliminates the connection between Chase's non-disclosure and damages. As previously discussed, liability for fraudulent concealment depends in large part on the

buyer's inability to discover a defect with a reasonable inspection. Notice of a possible defect is a factor to consider when deciding the reasonableness of an inspection; however, it is not by itself dispositive.

Chase's second argument is equally unpersuasive. The mold addendum states, "[b]uyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from microscopic organisms and/or mold and hold harmless/release and indemnify [Chase]…from any liability/resource/damages (financial or otherwise)." (Def. Ex. A).

The above clause is similar to a clause at issue in *Butters v. Consolidated Transfer & Warehouse Co., Inc.*, 510 P.2d 1269, 212 Kan. 284 (1973). In this case, a hold harmless clause stated, "[t]he Contractor agrees to hold the City harmless from any and all claims of liability for bodily injury, death or property damage to Contractor, employees, agents, servants, and third parties, while engaged in the performance of this contract." *Id*. at 285. The Kansas Supreme Court found that this clause was unenforceable because:

> [i]t is a general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed thereto, and mere general broad and seemingly all-inclusive language in the indemnifying agreement is not sufficient to impose liability for the indemnitee's own negligence. It has been so held for instance, with regard to the words 'any and all liability'.

*Id.* at 284; see also *Johnson v. Board of Pratt County Commissioners*, 913 P.2d 119, 136, 259 Kan. 305, 329 (1996) .

Indeed there is ample law in Kansas that further supports a strict construction of releases and contracts restricting liability. "An agreement seeking to protect a party from liability for its own negligence is subject to strict construction and will not be enforced unless the protection from liability is expressed in

clear and unequivocal terms." *Zenda Grain and Supply Co., v. Farmland Industries Inc.,* 20 Kan. App. 2d 728, 732 (1995). The Restatement of Torts provides further support. "[G]eneral clauses exempting the defendant from all liability for loss or damage will not be construed to include loss or damage resulting from his intentional, negligent or reckless misconduct, unless the circumstances clearly indicate that such was the plaintiff's intention." Restatement (Second) of Torts § 496B comment (d).

The release in the case *sub judice* is similar to the all inclusive, general releases from liability in the cases above; therefore, the Court will not construe the release as a bar to Plaintiffs' complaint. Furthermore, the cases above involved allegations of negligence, whereas Plaintiffs allege damages from intentional acts. If general language is insufficient to protect a party from its own negligence, than it will be even less sufficient to protect a party from an intentional tort.

It is ORDERED that Safeguard's Motion to Dismiss (Doc. 16) be GRANTED and it is further ORDERED that Chase's Motion to Dismiss (Doc. 18) be DENIED.

SO ORDERED this 13th day of July 2005.

                                                     s/ Wesley E. Brown

                                                    Wesley E. Brown, U.S. Senior District Judge