**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Erika Jo Larson and ) | |
| Jerod Larson ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 05-1005-WEB |
| ) | |
| Chase Manhattan Mortgage Corp., ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM AND ORDER

Now before the Court is Defendant's motion for summary judgment under Fed. R. Civ. P. 56. (Doc. 77). Plaintiffs have alleged claims of fraud, fraud by silence, negligent misrepresentation, and breach of contract. The Court has jurisdiction under 28 U.S.C. § 1332.

Plaintiffs stated in their brief that they are abandoning their claims for fraud, fraud by silence, and negligent misrepresentation; consequently, summary judgment is granted on those claims. (Pl. Br. in Opp'n to Summ. J. at 17, n.1). This leaves the Court with only the breach of contract claim.[1]

Plaintiffs argue Defendant breached the contract in three ways. First, Plaintiffs allege that all of the repairs and improvements performed at the house after the day of the contract breached the contract because they altered the condition of the property prior to closing. Second, Plaintiffs

---

[1] Plaintiffs attempt to add an additional cause of action in their response brief. This new claim for negligence is not in the pretrial order; consequently, the Court will not consider it. (Doc. 74); see *Eads ex re. Eads v. Unified School Dist. No. 289, Franklin County, Kan.,* 184 F. Supp. 2d 1122, 1131 (D. Kan. 2002) (issues not preserved in the pretrial order have been eliminated from the action and a party who did not preserve an issue may not use it in resisting a motion for summary judgment) (quoting *Hullman v. Board of Trustees of Pratt Com. College*, 950 F.2d 665, 668 (10th Cir. 1991)).

allege they were denied access to the house in violation of the contract.  Last, Plaintiffs allege the existence of mold at the house at closing shows a breach of Defendant's obligation to maintain the condition of the property.[2]

## I.  Summary Judgment Standards.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The Court views the evidence and all reasonable inferences in favor of Plaintiffs as the non-moving parties.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)).  "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.*  A genuine factual dispute requires more than a mere scintilla of evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler,* 144 F.3d at 670-671.  The movant can do this by demonstrating a lack of evidence on an essential element of the nonmovant's claim.  *Id.* at 671.  "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts

---

[2] Plaintiffs do not make clear if there is a separate claim for moisture in the basement. The pre-trial order shows Plaintiffs are alleging mold to be the cause of damages; consequently, the Court will treat Plaintiffs' claim as one for mold only.

to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e)).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

## II. Uncontroverted Facts.

For purposes of this summary judgment the following facts are deemed uncontroverted and have been viewed in the light most favorable to Plaintiffs.

1. Defendant acquired the residence located at 505 N. Cedar, McPherson, Kansas (hereinafter referred to as "the house") for $51,425.00 by way of a foreclosure sale on November 25, 2003. (Def. Ex. A).

2. Defendant hired Bob Moore of Elliott Real Estate, LLC as an independent contractor to act as its real estate broker and listing agent in selling the house. (Def. Ex. B, C).

3. Defendant hired Safeguard Properties, Inc. as an independent contractor to oversee the property and perform improvements and repairs at the house. (Def. Ex. C, D). Safeguard Properties, Inc. hired Kristen Ellington to perform improvements and repairs to the house. (Def. Ex. E). A-Plus ChemDry was hired by Kristen Ellington to clean the basement carpet at the house. (Def. Ex. F).

4. Marybeth and Dale Anderson served as the Plaintiffs' real estate agents and assisted them in finding and purchasing a house in McPherson, Kansas. (Def. Ex. G at 6: 13-14); (Def. Ex. H at 34: 3-5); (Def. Ex. I at 14: 4-25, 15: 18-20).

5. The house had an appraised value of $60,500 as of March 25, 2004, with an estimated value of $68,500 after the completion of $5,900 worth of improvements. (Def. Ex. AA at 7).

6. Neither the Plaintiffs, Plaintiffs' parents, or Plaintiffs' real estate agents have any experience as home inspectors. Further, none of them have ever been professionally licensed or certified to inspect homes, or environmental issues. (Def. Ex. G at 12: 3-16); (Def. Ex. H at 43: 15-21, 52: 19-23).

7. Plaintiffs inspected the house on April 30, May 1, and May 2, 2004 and found the basement to be dry and without mold each time. (Def. Ex. J at 37: 10-23); (Def. Ex. G: at 10: 2-9); (Def. Ex. H at 39: 4 to 40: 13); (Def. Ex. I at 24: 9 to 26:1); (Def. Ex. J at 16: 1-25).

8. Plaintiffs' real estate agents fully informed Plaintiffs of all the terms and provisions of the contract for sale before Plaintiffs signed. (Def. Ex. G at 13: 5-22). Plaintiffs completely understood all of the terms of the contract before signing it. (Def. Ex. H at 42: 2-23).

9. Plaintiffs submitted an offer to purchase the house to Bob Moore, on May 2, 2004 in the amount of $65,000. (Def. Ex. H at 46: 21 to 47: 3). The real estate contract was a document whose terms were produced by Plaintiffs. (Def. Ex. G. at 13: 5-9); (Def. Ex. I at 26: 11-25).

10. At the time Plaintiffs made their offer, they did not know Safeguard was going to be performing certain repairs to the home. (Def. Ex. I at 44: 1-7).

11. On May 3, 2004 Bob Moore gave Dale Anderson two addenda to be signed by Plaintiffs, entitled "Disclosure and Release Regarding Mold Addendum to Sales Contract" (hereinafter referred

to as "mold addendum") and "Addendum "A" to Purchase and Sale Contract". (Def. Ex. J. at 13: 13 to 14: 21); (Def. Ex. U, N). The terms in the addenda were provided by Defendant. (Pl. Ex. N at 16:11 to 17: 18).

12. A-Plus ChemDry cleaned the basement carpet on May 4, 2004. (Def. Ex. M). During the process of cleaning the carpets, the carpet cleaner noticed a significant water leak from the downstairs bathroom. (Pl. Ex. O ¶ 4).

13. On May 4, 2004 Plaintiffs returned to the house and Erika Larson noticed for the first time that the basement carpet was wet. (Def. Ex. H at 47: 18-21, 50: 14-24, 64: 23 to 65: 2). Plaintiffs' real estate agents told Plaintiffs that they asked Bob Moore why the basement carpet was damp, and were informed that it was because the carpets had been cleaned. (Def. Ex. G at 50: 5-18).

14. During their visit of May 4, 2004, Plaintiffs signed the addenda. (Def. Ex. H at 73: 25 to 74: 7). Through the mold addendum, Defendant advised Plaintiffs that mold could be present on the property and recommended they obtain an expert inspection of the house for that purpose. (Def. Ex. N).

15. Plaintiffs' real estate agents fully informed Plaintiffs about the terms and provisions of the addenda before Plaintiffs had signed them. (Def. Ex. J at 14: 25 to 15: 23); (Def. Ex. I at 34: : to 36: 16). Plaintiffs understood all of the terms and provision of the addenda before signing it. (Def. Ex. G at 28: 17 to 29: 14).

16. Plaintiffs' real estate agents, understood the mold addendum to be a waiver for any mold that existed at the time the contract was signed. (Pl. Ex. A at 70: 23 to 71: 2). Plaintiffs understood the addenda to mean that they agreed to buy the house in its current condition without any warranties. (Pl. Ex. E ¶ 12).

17. Plaintiffs never obtained an inspection of the house by a qualified expert as

5

recommended by the mold addendum.  (Def. Ex. G at 29: 15-20).

18. Plaintiffs and their real estate agents were aware on or before May 6, 2006 that Defendant would continue to make improvements to the house prior to closing.  (Def. Ex. J at 29: 25 to 30: 12); (Def. Ex. Z).  On May 6, 2004, Erika Larson and Mary Beth Anderson picked out vinyl to be installed in the house by Kristen Ellington.  Erika Larson also later picked out paint colors for Kristen Ellington to apply to the house.  (Def. Ex. J at 30: 8-12).  Plaintiffs never rescinded the contract after discovering that Defendant was making improvements and repairs to the house.  (Def. Ex. G at 38: 20 to 39: 16); (Def. Ex. I at 44: 14 to 45: 12).

19. The contract for sale was signed by John DeLuca, an employee of the Defendant with full authority on May 6, 2004.  (Def. Ex. C ¶ 12); (Def. Ex. L at 4).

20. While Plaintiffs would have preferred to do the repairs themselves, they allowed Defendant to continue making improvements and repairs to the house at no additional cost to Plaintiffs after the date of the real estate contract. (Def. Ex. G at 38: 20 to 39: 16); (Def. Ex. I at 45: 1-12).

21. Plaintiffs obtained approval for a rural development loan on May 11, 2004, subject to the completion of required improvements as listed in the May 10, 2004 appraisal.  (Def. Ex. O); (Def. Ex. P); (Def. Ex. Q).

22. While Bob Moore initially told Plaintiffs not to enter the house, he later told Plaintiffs they could enter the house when the workers were not there.  (Def. Ex. I at 51: 3-7, 78: 14-21); (Def. Ex. J at 26: 20 to 27: 11).

23. Plaintiffs were allowed to have professional inspections of the home prior to closing. (Def. Ex. I at 86: 18-24).  Loges Insulation entered the house on Plaintiffs' behalf on May 13 and May 21, 2004 to conduct an inspection, obtain an estimate, and to install insulation.  (Def. Ex. R);

(Def. Ex. S). Grove Termite & Pest Control, Inc. entered the house on behalf of the Plaintiffs on May 18, 2004 for a termite inspection. (Def. Ex. T).

24. Plaintiffs closed on the house on June 1, 2004 without conducting any final personal inspection or walk through of the house. (Def. Ex. H at 69: 7-9).

25. Upon entering the basement of the house on June 1, 2004, Plaintiffs discovered the basement had a musty smell and the basement carpet had a grayish-green or fuzzy blotches of mold. (Def. Ex. H at 78: 23 to 79: 18); (Def. Ex G at 32: 24 to 33: 3, 33: 22 to 34: 24).

### III.  Arguments.

Defendant argues there was no breach of contract because: 1) Plaintiffs were allowed to enter the premises; 2) Plaintiffs suffered no damages for repairs and improvements made after execution of the contract; 3) Plaintiffs assisted and relied on these repairs to comply with rural development loan; consequently, they ratified the repairs and waived their ability to sue for breach of contract; and 4) Plaintiffs' claim is barred or estopped by the terms of the mold addendum.

Plaintiffs argue that they did not see any moisture in the basement on May 22, 2004 and their breach of contract claim is not barred or estopped by the terms of the mold addendum.

In reply, Defendant further argues that Plaintiffs have failed to contest Defendant's first three arguments; consequently, the Court should deem them admitted. The Court agrees. While Plaintiffs listed facts relevant to these claims, they included no arguments or legal support to rebut Defendant's first three arguments. The Court will not advocate a position for a party that has neglected for one reason or another to press its point. See *Phillips v. Calhoun*, 956 F.2d 949, 953-954 (10th Cir. 1992) (holding that a party must support an argument with legal authority or forfeit

the argument). Consequently, summary judgment is granted on the following claims: 1) that repairs and improvements performed after the execution of the contract breached the contract; and 2) Plaintiffs were denied access to the house in violation of the contract. The Court will address Plaintiffs' final claim that the existence of mold on the day of closing breached Defendant's contractual duty to maintain the house in the same condition.

## IV.  Analysis.

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state, which in this case is Kansas. *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988). Kansas uses the rule *lex loci rei sitae* which provides for the use of local law to determine the rights and obligations of the parties to real property. *Resolution Trust Corp. v. Atchity*, 259 Kan. 584, 593, 913 P.2d 162, 169 (1996). The parties have used Kansas law in their arguments and the Court will also apply Kansas law.

The elements for a breach of contract claim are: 1) the existence of a contract between the parties; 2) consideration; 3) the plaintiff's performance or willingness to perform in compliance with the contract; 4) defendant's breach of the contract; and 5) that plaintiff was damaged by the breach. *Bradbury Co. v. Teissier-duCros,* 387 F. Supp. 2d 1167, 1171 (D. Kan. 2005).

Defendant argues the mold addendum estops or bars Plaintiffs from alleging a breach of contract claim. Plaintiffs claim that paragraph 9(1) makes Defendant responsible for mold damages until closing despite the mold addendum.

Paragraph 9(1) of the real estate sales contract states:

**9.  Condition of Property**, As a condition of closing, the following shall apply:
(1) Property and improvements thereon, including landscaping and grounds shall be

maintained in the same condition as on the date hereof, subject to ordinary wear and tear...
(Def. Ex. L ¶ 9).

The mold addendum reads as follows:

> Buyer is hereby advised that mold and/or other microscopic organisms may exist at the property and such microscopic organisms and/or mold may cause physical injuries...
> ...
> Buyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from microscopic organisms and/or mold and hold harmless, release and indemnify seller, Chase Manhattan Mortgage Corporation...from any liability/resource/damage (financial or otherwise).
> ...
> This disclosure and release is executed voluntarily and with full knowledge of its significance.
> ...
> Chase Manhattan Mortgage Corporation real estate brokers and agents are not qualified to inspect property for mold or make recommendations or determinations concerning possible health or safety issues. The purpose of this disclaimer is to put buyers on notice to conduct their own due diligence regarding this matter using appropriate qualified experts.

(Def. Ex. N).

The Court must determine how the mold addendum affects Defendant's contractual obligation under paragraph 9(1). The Court will look to both documents to determine the intention of the parties. *Shepard v. John Hancock Mut. Life Ins. Co.,* 189 Kan. 125, 129, 368 P.2d 19 (1962) (where two or more instruments are executed by the same parties at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together).

Looking at the mold addendum first, the language unequivocally shifts the entire burden for mold detection and risk of mold damages to Plaintiffs. However, the language in paragraph 9(1) plainly makes Defendant responsible for maintaining the house in the same condition at closing as it was the date of the contract.

These provisions place liability for mold damages discovered at closing on different parties. The provisions are in conflict and show that this contract is ambiguous as to the parties' intentions

9

with respect to this issue. *Catholic Diocese of Doge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992) (ambiguity exists when instrument containing conflicting language leaves uncertainty as to which one of the two meanings is the proper meaning).

Plaintiffs argue the contract should be construed against Defendant as the mold addendum was drafted by Defendant. "[W]here words or other manifestation of intentions bear more than one reasonable meaning, an interpretation is preferred which operates more strongly against the party from whom they proceed." *Smith v. Russ*, 184 Kan. 773, 779, 339 P.2d 286, 291 (1959).

In this case, paragraph 9(1) of the real estate contract was provided by Plaintiffs while the mold addendum was provided by Defendant. Consequently, paragraph 9(1) and the mold addendum are construed against Plaintiffs and Defendant respectively. This double negative construction provides little guidance in this situation where each party has provided disputed contractual provisions.

Plaintiffs argue that they did not draft paragraph 9(1) of the contract but instead used a form contract commonly used throughout the McPherson real estate community. It is irrelevant where Plaintiffs obtained their contract or that others also use the contract. Its terms were provided and chosen by Plaintiffs; consequently, it is appropriately construed against them for a net zero effect as discussed above.

A second more useful rule of construction states, "where there is an uncertainty between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions. It is a reasonable inference that specific provisions express more exactly what parties intend than broad or general clauses which do not necessarily indicate that the parties had the particular matter in thought." *Id.*

Paragraph 9(1) is a broad, general provision as Defendant assumed all responsibility for maintaining all the property and improvements. The mold addendum, however, is a specific provision that makes Plaintiffs liable for risk of mold and damages from mold. Because the mold addendum specifically addressed this one condition, it is reasonable that the parties expected this provision to govern the responsibilities of the parties in case of mold, despite the existence of paragraph 9(1). The Court holds that the mold addendum carved out a specific exception to Defendant's responsibilities in paragraph 9(1).

Plaintiffs argue that the mold addendum should be read as applying only until the day of contractual execution, after which paragraph 9(1) would govern. The Court disagrees that such a construction is correct as it would unreasonably emasculate the exculpatory language of the mold addendum. The language of the mold addendum is broad and it contains no limiting language to support such a construction.[3] Indeed, the language is prospective as the final sentence of the mold addendum states, "[t]he purpose of this disclaimer is to put buyers on notice to conduct their own due diligence regarding this matter using appropriate qualified experts." (Def. Ex N). The Court's construction gives appropriate weight to the mold addendum while still giving effect to paragraph 9(1) regarding conditions other than mold. *See Dillard Dept. Stores, Inc. v. State, Dept. of Human*

---

[3] In a previous order denying a motion to dismiss, the Court strictly construed the exculpatory clause as not barring Plaintiffs' now abandoned fraud claim. *Larson v. Safeguard*, 379 F. Supp. 2d 1149 (D. Kan. 2005). However, the Court will not construe the clause strictly in this instance as it is being applied to a breach of contract claim instead of a claim for negligence or an intentional tort. *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355 (1989) (in Kansas, a party is bound by the terms of a contract, however disadvantageous, unless it is illegal, contrary to public policy or involves, fraud, mistake or duress); *Johnson v. Board of County Com'rs of Pratt County*, 259 Kan. 305, 329, 913 P.2d 119 (1996) (contracts for the exemption of liability for negligence are strictly construed against the party relying on them). The Court also notes Plaintiffs have not argued for such a strict interpretation.

*Resources*, 28 Kan. App. 2d 229, 236, 13 P.3d 358 (2000) (an interpretation giving reasonable, effective meaning to all terms is preferred to one that leaves some terms with no effect); see also Restatement (Second) of Contracts § 203.

Plaintiffs next argue that making Plaintiffs liable for mold at closing is contrary to the intent of the parties. Plaintiffs provide statements showing that their realtor, Marybeth Anderson, believed the mold addendum only applied to mold problems found on the date it was signed. (Pl. Ex. A at 70: 23 to 71: 4). Erika Jo Larson further stated she believed the house would be in the same condition as when she signed the contract. (Pl. Ex. H at 77: 14-20). The Court will not consider these statements as all parties specifically agreed that extrinsic evidence relating to this contract would not be used in court. (Def. Ex. L ¶ 19).

Because Plaintiffs agreed to hold Defendant harmless for mold detection and damages, this specific provision controls. Defendant is not contractually liable for Plaintiffs' damages from mold; consequently, the Court grants Defendant's motion for summary judgment.

## V.  Attorneys fees.

Defendant requests attorney's fees as specifically allowed under paragraph 18 of the real estate contract. (Def. Ex. L ¶ 18). Rule 54 directs a party to file a motion for attorneys' fees no later than 14 days after judgment, to include the basis for such an award, and an amount or estimate of the amount sought. Fed. R. Civ. P. 54(d)(2). Defendant's request is not consistent with this rule as there is no cost estimate; consequently, the Court declines to rule on it.

It is ORDERED that Defendant's Motion for Summary Judgment (Doc. 77) be GRANTED. The clerk is directed to enter judgment for Defendant.

SO ORDERED this 15th day of August 2006.

s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge